1
2
3
4
5
6                UNITED STATES DISTRICT COURT
7              NORTHERN DISTRICT OF CALIFORNIA
8

9 ANTHONY SHEPPARD,              Case No. 17-cv-01332-JSC

10       Plaintiff,

11     v.                     **ORDER RE: PLAINTIFF AND DEFENDANT'S CROSS-MOTIONS FOR SUMMARY JUDGMENT**

12 NANCY A. BERRYHILL,

13       Defendant.       Re: Dkt. Nos. 19, 26

14       Plaintiff Anthony Sheppard seeks social security benefits for impairments including:

15 depression, posttraumatic stress disorder, and back pain.  (Administrative Record ("AR") 58.)

16 Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision

17 by the Commissioner of Social Security denying his benefits claim.  Now before the Court are

18 Plaintiff and Defendant's Motions for Summary Judgment.[1]  (Dkt. Nos. 19 & 26.)  Because the

19 Administrative Law Judge ("ALJ") improperly weighed the medical opinion evidence and erred

20 with respect to the adverse credibility finding, the Court GRANTS Plaintiff's motion, DENIES

21 Defendant's cross-motion, and REMANDS for further proceedings.

22                      **LEGAL STANDARD**

23       A claimant is considered "disabled" under the Social Security Act if he meets two

24 requirements.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

25 First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by

26 reason of any medically determinable physical or mental impairment which can be expected to

27

28 ───────────────
[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Dkt. Nos. 7 & 10.)

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," the claimant can still do his "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

When the claimant has drug or alcohol addiction (DAA), the ALJ must first determine whether the claimant is disabled "without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935." *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If the claimant is disabled without separating the DAA impact, then the ALJ "should proceed under §§ 404.1535 or 416.935 to determine if the claimant would still be found disabled if he or she stopped using alcohol or drugs." *Id.* (citations omitted). Specifically, the ALJ must determine "which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol." *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); 20 C.F.R. § 404.1535(b). "If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Parra*, 481 F.3d at 747. Through this process, the claimant has the burden of proving that he is disabled. Social Security Ruling ("SSR") 13-2P, 2013 WL 621536, at *4 (2013).

The evidence used in the materiality analysis differs depending on whether the claimant's

disabilities are physical or mental. *Id.* at *7. If mental, the ALJ "must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA. Unlike cases involving physical impairments, we do not permit adjudicators to rely exclusively on medical expertise and the nature of a claimant's mental disorder." *Id.* at *9.

In addition to the SSR 13-2P DAA materiality analysis, when the impairment is mental, a failure to meet a listed impairment under Appendix 1 does not end the ALJ's analysis. SSR 85-15, 1985 WL 56857, *4 (1985). "[T]he final consideration is whether the person can be expected to perform unskilled work." *Id.* Further, the ALJ "must not assume that failure to meet or equal a listed mental impairment equates with capacity to do at least unskilled work." *Id.* Unskilled work requires the sustained ability to: "understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. *Id.* "A substantial loss of ability to meet any of these basic work-related activities would . . . justify a finding of disability." *Id.*

## PROCEDURAL HISTORY

On October 29, 2012, Plaintiff filed for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, alleging disability beginning October 1, 2012 caused by depression, posttraumatic stress disorder, and back pain. (AR 58.) His initial application and request for reconsideration were denied. (AR 80-84, 89-94.) Plaintiff requested a hearing before an ALJ. (AR 95-98.) On August 20, 2014, ALJ Philip Callis conducted the initial hearing. (AR 673-94.) The ALJ held a subsequent hearing on March 4, 2015 to allow Plaintiff's counsel an opportunity to cross-examine the non-examining physicians. (AR 37-49.) In a written decision, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act and its regulations and, therefore, was not entitled to SSI benefits. (AR 16-36.) Plaintiff requested an Appeals Council review, but was denied on July 19, 2016. (AR 10-15.) On February 6, 2017, Plaintiff requested and received an extension of time to file a civil action. (AR 1.) Plaintiff commenced this action for judicial review on March 13, 2017 pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). (Dkt. No. 1.)

**ADMINISTRATIVE RECORD**

I.     **Medical Evidence**

    A.     **Medical History**

Plaintiff has a history of mental health problems.  Growing up, Plaintiff was exposed to violence, alcohol, and substance abuse.  (*Id.*)  When he was 17, he began using marijuana on a daily basis to cope with symptoms of depression and then other illegal drugs as well.  (AR 606-7.)  Today, he uses marijuana daily and is on a continued methadone treatment.  (AR 648.)  Physically, Plaintiff has asthma and problems with back and neck pain from a sports injury, but he does not contend that either is disabling.  (AR 631, 60.)  In 2013, Plaintiff was hit by a car while riding a bicycle and sustained a head injury, but he had no permanent impairment.  (AR 562-69, 631, 50, 60.)

    B.     **Medical Opinions**

        1.     **Examining Psychologist Lesleigh Franklin**

On August 8, 2013, Dr. Lesleigh Franklin examined Plaintiff, conducting a clinical interview and a range of psychological exams.  (AR 604.)  Dr. Franklin diagnosed Plaintiff with Major Depressive Disorder, Severe with Psychotic Features; Opioid Dependence, On Agonist Therapy[2]; and head trauma.  (AR 611.)  She reported that Plaintiff was severely impaired in attention, concentration, short-term memory, and visuospatial organization and moderately impaired in social functioning, executive functioning, long-term memory, and judgment.  (AR 615.)

Dr. Franklin observed that Plaintiff demonstrated linear thought processes, but with slowed speech and depressed mood and affect.  (AR 608.)  In many stages of testing he performed average, but fell significantly short of average on memory and emotional regulation.  (*See id.*)  On the Mini Mental Status Exam, where extensive neuropsychological illnesses from trauma usually reflects moderate to severe impairment, Plaintiff "demonstrated considerable difficulties."  (AR 609-10.)  Specifically, his attention was in the extreme low range and his working memory,

---

[2] Agonist therapy is the use of a drug (the agonist) that mirrors the effects of an addictive drug.

delayed memory, and impulse control were impaired causing difficulties in task completion, attention, planning, problem solving, and organizing. (AR 609-611.) Plaintiff had significant difficulties in executive functioning such as impulse control and immediate memory as well as moderate difficulties in behavioral and emotional regulation. (AR 610-11.)

In another psychological exam studying emotions, Plaintiff demonstrated ongoing severe depression and psychosis, symptoms of anxiety as well as auditory hallucinations, thought disorganization, and persecutory ideation. (AR 611-12.) Testing results indicated that he "struggles with controlling his behavior and often externalizes his emotional difficulties through aggressive behavior," and fears he will lose control. (AR 612.) "He generally disliked being around a lot of people," having specific difficulties with authorities, but he sometimes seeks out social interactions. (*Id.*) Dr. Franklin noted that the validity indicators on this test suggested the need to interpret the results with extreme caution as there was a tendency to "over-report and endorse atypical items." (AR 611.)

In the interview, Plaintiff reported socializing at school with many friends. (AR 605.) He also had an intimate relationship for the last five years, but few other long-term relationships. (AR 606.) Plaintiff has a daughter whom he sees frequently and friends he sees occasionally. (*Id.*)

Two months prior to the interview, he was hit by a car while riding his bicycle without a helmet. (AR 606.) Since then, he has had frequent headaches and dizzy spells. (*Id.*) He also reported some neck pain from an old football injury. (*Id.*) Plaintiff had a history of drug use, was currently on a methadone treatment, and smoked marijuana a few times a week. (AR 606-7.)

Dr. Franklin reported that since childhood Plaintiff experienced depression: twice attempting suicide and self-harmed, but he did not presently have suicidal ideation. (AR. 607.) During periods of severe depression, he experienced auditory hallucinations with voices different from his own consciousness that tried to "persuade him to do things he does not want to do." (*Id.*) In 2003, he was assaultive toward his family. (*Id.*) In adolescence, Plaintiff attended therapy at a group home, but he had not received therapy as an adult. (AR 605, 7.) In 2012, he was prescribed Remeron, which "seemed to help with his mood," but he did not refill his prescription. (AR 607.)

Plaintiff complained of difficulties with motivation, memory, concentration (frequently missing appointments), and finding pleasure in activities. (*Id.*)

### 2. Counselor Haruka Kelley

Also in August 2013, counselor Haruka Kelley, at Humanistic Alternatives to Addiction Research & Treatment, Inc., a methadone program, provided a statement of her six-month long addiction treatment of Plaintiff. (AR 619.) She reported he was in good standing, but noted that Plaintiff had "been dismissed from multiple social service programs due to inability to keep appointments and poor attendance compliance. . . . despite his intentions. (*Id.*) She opined that his general mental emotional state and his head injury (the bicycle-car accident) affected his ability to complete tasks. (*Id.*)

### 3. Non-examining Psychologist Peter Bradley

On September 24, 2013, Dr. Peter Bradley submitted a "Disability Determination Explanation" finding Plaintiff not disabled from a review of medical records, including Dr. Franklin and counselor Kelly's reports. (AR 58-72.) Dr. Bradley found that Plaintiff did not meet a listed impairment and that a drug and alcohol addiction materiality determination was not required. (AR 72.) However, Dr. Bradley also found that Plaintiff was severely impaired by substance addiction disorder, anxiety disorders, and affective disorders. (AR 65.) He found moderate limitation in social functioning; maintaining concentration, persistence and pace; understanding, remembering, and carrying out detailed instructions; performing scheduled activities; maintaining attendance; working in coordination or close proximity with others; interacting with the general public; and responding appropriately to work setting changes. (AR 65, 68-69.)

In making his report, Dr. Bradley gave less weight to Dr. Franklin's evaluation because it was not consistent with her own exam or the record. (AR 68-69.) He noted that Dr. Franklin's examination was a one-time appointment, that she relied heavily on Plaintiff's reports, and that there was no indication she reviewed Plaintiff's current records. (AR 67.)

#### 4. Examining Psychiatrist Rene Thomas

On October 16, 2013, Dr. Rene Thomas examined Plaintiff, with a follow-up examination on January 22, 2014. (AR 630, 634, 640.) She diagnosed him with: major depressive disorder, single episode and polysubstance abuse, in recovery. (AR 634.) She noted Plaintiff's history of suicide attempts and self-mutilation. (*Id*.) She also noted that he was hit by a car while riding a bicycle in May of 2013. (*Id.*) Plaintiff had a chronically moderate-to-severe depressed mood with a mildly depressed affect. She prescribed Zoloft for depression and a follow-up visit. (AR 635.)

In the follow-up, Plaintiff reported that his mood improved "some" with Zoloft; however, he continued to feel depressed and frustrated with a mildly depressed affect. (AR 640.) She again diagnosed him with major depressive disorder, single episode and polysubstance abuse, in recovery. (*Id.*) Dr. Thomas increased his dosage of Zoloft and provided 17 minutes of psychotherapy. (*Id.*)

#### 5. Examining Psychologist Deepa Abraham

In July 2014, Dr. Deepa Abraham examined Plaintiff twice at Plaintiff's request. (AR 646.) She performed a clinical interview, administered psychological tests, and examined records from Drs. Thomas and Franklin, counselor Kelley, and the Sausal Creek Outpatient Stabilization Clinic. (*Id.*)

Dr. Abraham diagnosed Plaintiff with: Depressive Disorder Not Otherwise Specified; Cannabis Dependence; and Opioid Dependence, Sustained Full Remission, on Agonist Therapy. (AR 655-56.) She opined that his "depressive symptoms . . . may reflect the dulling effect of marijuana and contribute to a sense of lethargy and fatigue," and that his marijuana use "sustained his Depressive Disorder." (AR 657). Dr. Abraham concluded that Plaintiff's Depressive Disorder "can be managed with psychotropic medications." (AR 656-57.)

Plaintiff was markedly impaired in his "mental abilities to attend, sustain effort, comprehend or remember" and moderately impaired in social interactions and adaptation. (AR 658-659.) Dr. Abraham opined that Plaintiff may be considered to have a permanent psychiatric disability maintained by "persistent negative mood states; continued cannabis dependence; [and] hypothesized drug exposure during gestation," but various forms of therapy and treatment would

"decrease to an extent the observed disability." (*Id.*) Dr. Abraham noted that Plaintiff would have difficulty competing for jobs due to his Depressive Disorder symptoms. (AR 658.)

In testing, Dr. Abraham noted that Plaintiff's short-term memory was significantly compromised, but qualified that his inattentiveness could have affected the results. (AR 651.) He had no difficulty with long-term memory. (*Id.*) Dr. Abraham also opined his "poor concentration and attention" was due to his drowsiness. (*Id.*)

Dr. Abraham noted that Plaintiff "behaved in a socially acceptable and polite manner, but came across as fatigued" falling asleep throughout the session. (AR 649.) He was over an hour late to his first session. (*Id.*) At the second session, Plaintiff arrived timely, but "[h]e struggled to maintain eye contact . . ." and "he failed to exert effort when participating in the assessment." (*Id.*) Thus, Dr. Abraham opined that the "scores may not accurately reflect [Plaintiff's] true functioning." (*Id.*) He had a mildly depressed mood and affect. (AR 650-51.) He was generally "lethargic and melancholic as well as self-deprecating." (AR 651.) On one test, negative mood states mildly compromised Plaintiff's performance. (AR 654.)

Plaintiff's IQ was low borderline average, but again his inattention altered the results from his true cognitive functioning, and so Dr. Abraham noted the inconsistency between her results and Dr. Franklin's. (AR 653.) On perceptual reasoning and verbal perception he was in average ranges. (*Id.*) His working memory was borderline average, suggesting mild impairment of immediate recall, limited concentration and attention, and struggles with complexity and processing speed. (*Id.*)

In the clinical interview, Plaintiff reported "a history of symptoms consistent with depression," and memory deficits from his head injury. (AR 647.) "His speech sounded slurred and he demonstrated poor word-finding skills." (AR 649.) Plaintiff reported that the Zoloft treatment made him "more calm. Nothing was bothering [him]. [He] could tell it was working, but it made [him] feel like a zombie." (AR 648.) Plaintiff reported that he does not have hobbies or socialize with friends, just his girlfriend and family. (AR 652.)

### 6. Non-examining Physician Minh Vu

Dr. Minh Vu provided a "Medical Interrogatory Physical Impairment(s)" for Plaintiff on December 14, 2014. (AR 660-62.) In the interrogatory, Dr. Vu noted Plaintiff's traumatic brain injury and the moderate swelling on a CT impression, but reported that no acute intracranial abnormality was seen. (AR 660.) She assessed Plaintiff's records and did not find that he met a listed impairment for physical disabilities, but did not provide an opinion on psychological impairments. (*See* AR 660-61.)

### 7. Non-examining Psychologist Michael Lace

On December 15, 2014, Dr. Michael Lace provided a "Medical Source Statement of Ability to Do Work-related Activities (Mental)" and a "Medical Interrogatory-Mental Impairment(s)" for Plaintiff. (AR 663-71.) Dr. Lace opined that Plaintiff was markedly impaired in understanding, remembering, carrying out, and making judgments on complex instructions and work-related decisions. (AR 663.) Dr. Lace also opined Plaintiff was moderately impaired to perform these tasks on simple instructions and work-related decisions. (*Id.*) Plaintiff was impaired in his ability to interact appropriately. (AR 664.) Specifically, Dr. Lace opined that Plaintiff was moderately to markedly impaired in interactions with the public, supervisors, and co-workers. (*Id.*) He also found that Plaintiff was markedly impaired in his ability to respond appropriately to usual work situations and to changes in a routine work setting. (*Id.*)

Dr. Lace based these opinions on the four diagnosed conditions: depression, major depressive disorder with psychotic features, opioid dependence, and cannabis dependence. (AR 663.) He further noted that Dr. Franklin's report did not take into account Plaintiff's cannabis dependence, but does not opine on how or if that should alter the finding of impairment. (*See* AR 663, 67.) Dr. Lace reported under Plaintiff's interaction impairments that the impairment met a combination of 12.04 and 12.09 listings, but not an individual listing. (AR 664.) However, Dr. Lace also reported this combination of listings generally, implying that the combination of impairments may be based solely on interaction impairments. (AR 669.) Finally, Dr. Lace wrote that his answers would not change if Plaintiff abstained from cannabis. (*Id.*)

Regarding Plaintiff's functional limitations, Dr. Lace found him markedly impaired in maintaining social functioning, concentration, persistence or pace, and further, Dr. Lace found him moderately impaired in activities of daily living.  (AR 668.)

## II.     The ALJ Hearing

On August 20, 2014, Plaintiff appeared with his counsel at his scheduled hearing before ALJ Philip Callis in Oakland, California.  (AR 673-94.)  Plaintiff and Vocational Expert ("VE") Malcolm Bordzinsky testified at the hearing.  (*Id.*)  A supplemental hearing was conducted on March, 4, 2015 so Plaintiff could cross examine Medical Experts ("MEs") Dr. Michael Lace, and Dr. Minh Vu[3].  (AR 40-49.)

### A.     Plaintiff's Testimony

Plaintiff testified that in 2013 he worked as a washer in a bakery for a few weeks.  (AR 678.)  He left the position after a co-worker would not stop spraying him with hot pressurized water.  (AR 678.)  Prior to that job, Plaintiff worked in a warehouse.  (AR 680.)  When he was a teenager, Plaintiff worked in retail customer service.  (AR 681.)  Currently, Plaintiff works a few hours a day in his friend's barbershop, sweeping when necessary.  (AR 685.)

He previously lived at a homeless shelter, but because he distrusted the people and got into altercations, he left.  (AR 686.)

Plaintiff has neck and back pains.  (*Id.*)  He sees a doctor to treat his pain, but he has to be reminded the morning of appointments or he will forget to appear.  (AR 684.)  He has seen a psychologist twice for his mental health issues, but he has difficulties remembering the appointments and has to reschedule.  (*Id.*)  He is currently attending a methadone clinic once a week to help stay clean.  (AR 678.)  While at the clinic, the staff remind him to take his medication, so he does not forget.  (*Id.*)  He also attends domestic violence classes each week.  (AR 688.)  He has had difficulties remembering to attend these appointments, but they have been understanding of his situation and have allowed him to exceed the allowable absences.  (*Id.*)

---

[3] Dr. Vu's testimony is not material to this analysis, as she only testified on exposure to respiratory irritants.  (AR 46.)

Plaintiff was hit by a car while riding his bike and injured his head, requiring around a dozen stitches. (*Id.*) After the accident he experienced dizziness and memory problems. (AR 689.) He continues to have difficulty focusing on a task. (*Id.*)

Plaintiff testified that he currently smokes marijuana, but there have been periods in the past where he did not smoke marijuana. (AR 48, 683.) During those periods of abstinence, his depression symptoms did not improve but stayed the same. (AR 48.)

## B.     Dr. Lace's Testimony

At the ALJ's request, Dr. Michael Lace testified regarding his interrogatory answers on Plaintiff's disability. (AR 40-46.) Dr. Lace opined that if Plaintiff ceased using marijuana his depression would improve to the point of non-disability. (AR 41.) Dr. Lace based this opinion on his experience and Plaintiff's poor attendance and poor compliance as consistent with marijuana use. (*Id.*) He also opined that neither Dr. Franklin nor Dr. Abraham adequately addressed marijuana use as a contributing factor. (AR 42.) Dr. Lace also testified that Plaintiff's depression could be caused by other factors including: the violence Plaintiff experienced and witnessed growing up, seeing his mother abuse alcohol and drugs, being incarcerated multiple times, and having a stillborn child in 2010. (AR 44.) He also found that Plaintiff's exposure to violence and drugs in his childhood could have caused posttraumatic stress disorder. (AR 44.)

## C.     Vocational Expert's Testimony

At the ALJ's request, VE Malcolm Brodzinsky, who was present for Plaintiff's testimony, testified regarding Plaintiff's ability to perform work. (AR 691-693.) The ALJ first proposed a hypothetical individual limited to jobs avoiding concentrated exposure to respiratory irritants and also "limited to simple, unskilled work with minimal co-worker and public contact." (AR 691.) The VE found that there were jobs in the national economy and named three for the ALJ: Hand packager (DOT 920.587-018), medium exertion, unskilled with and SVP of 2; (2) Kitchen Helper (DOT 318.687-010), medium exertion, unskilled with an SVP of 2; and (3) Bench Assembler (DOT 739.687-030), light exertion, unskilled with and SVP of 2. (AR 691.)

The ALJ limited the hypothetical in a series of ways including: (1) the individual could not consistently work an eight-hour workday; (2) the individual has two to three absences a month; (3)

the individual is off-task 25 percent of the time; (4) the individual consistently leaves work suddenly without returning or informing a supervisor; and (5) the individual has regular disputes with co-workers, the public, and supervisors. (AR 692-93.) The VE opined that each of these limitations would preclude employment. (*Id.*)

### III. The ALJ's Findings

In a March 2015 written decision, the ALJ found Plaintiff not disabled under section 1614(a)(3)(A) of the Social Security Act, taking into consideration the testimony and evidence, and using the SSA's five-step sequential evaluation process for determining disability. (AR 16-30); *see* 20 C.F.R. § 416.920(g).

Under the first step, the ALJ found that Plaintiff had not engaged in a substantially gainful activity since October 29, 2012. (AR 21.) Under the second step, the ALJ found that Plaintiff had the following severe impairments: Depressive Disorder NOS; Cannabis Dependence; and Opioid Dependence, in sustained full remission, on agonist therapy. (*Id.*) At the third step, the ALJ found that Plaintiff's impairments medically equaled sections 12.04 and 12.09 of CRF Part 404, Subpart P, Appendix 1. (AR 22.) Given this finding, the ALJ did not proceed to steps four or five. (*See id.*) As this finding included Plaintiff's substance use disorders, the ALJ then went onto to assess whether Plaintiff would have a medically determinable impairment if he stopped cannabis abuse. (AR 22-30.)

First, the ALJ found that Plaintiff's remaining limitations would cause him to have a severe impairment or combination of impairments. (AR 22.)

Second, the ALJ found that Plaintiff's remaining impairments would not medically equal or exceed an impairment or combinations of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ considered sections 3.03, 12.04, and 12.09. (AR 22-23.) Specifically, the ALJ found the Plaintiff would have moderate difficulties in social functioning, concentration, persistence, and pace, and mild restrictions in daily living activities. (AR 23.) However, the ALJ did not find these restrictions met either paragraphs B or C criteria in the listings. (*Id.*); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(B), (C). Third, the ALJ found that Plaintiff would have the RFC to perform a full range of work at all exertional levels, limited to:

avoiding concentrated exposure to respiratory irritants, simple unskilled work, and minimal contact with co-workers and the general public. (*Id.*) In making this RFC determination, the ALJ first found that Plaintiff's medically determinable impairments could produce his alleged symptoms, but the ALJ did not consider Plaintiff's statements concerning intensity, persistence, and limiting effect of his symptoms to be credible because they were inconsistent with the RFC assessment. (AR 24.)

To make the RFC determination, the ALJ relied on the assessments of Drs. Bradley and Lace, according them great weight because of their consistency with the record. (AR 27.) He also found Dr. Bradley's assessment consistent with Dr. Thomas' treatment notes. (*Id.*) Moreover, the ALJ determined that Dr. Lace was the only medical professional to review the entire record and opine on the cannabis' impact on Plaintiff's mental functioning. (*Id.*)

The ALJ accorded Dr. Franklin's opinion little weight because she evaluated the claimant once, and "appeared to have relied, at least in part, on [Plaintiff's] subjective complaints in reaching her conclusion." (*Id.*) He also accorded her little weight as she did not opine on Plaintiff's cannabis use. (*Id.*)

The ALJ accorded counselor Kelly's opinion less weight, specifically determining that the statement —"a history of emotional problems, which 'she understands predate and exist independently from his substance abuse'"—was "less than unequivocal" and suggested reliance on someone else's conclusions. (*Id.*) Further, he accorded her opinion less weight because she did not note Plaintiff's cannabis use. (*Id.*)

Finally, the ALJ accorded Dr. Abraham's opinion less weight as he also found her functional assessment "at best equivocal." (*Id.*) He noted that while Dr. Abraham opined that cannabis dependence "may have contributed to the dulling effect associated with" Plaintiff's depression, fatigue, and lethargy, Dr. Abraham did not address cannabis' impact on Plaintiff's mental functioning. (*Id.*)

The ALJ did not find Plaintiff's own allegations credible, determining (1) his "fairly extensive activities of daily living;" and (2) his medication were "somewhat effective . . . as evidenced by a lack of more aggressive mental treatment . . . ." (*Id.*)

Returning to the fourth step in the disability determination analysis, the ALJ determined that Plaintiff had no past relevant work. (AR 29.) At the fifth step, the ALJ determined that there would be a significant number of jobs in the national economy if Plaintiff stopped his cannabis use. (*Id.*) Specifically, Plaintiff would be able to perform as: (1) a Hand Packager (DOT 920.587-018), medium exertion, unskilled with and SVP of 2; (2) a Kitchen Helper (DOT 318.687-010), medium exertion, unskilled with an SVP of 2; and (3) Bench Assembler (DOT 739.687-030), light exertion, unskilled with and SVP of 2. (AR 30.) These positions were non-exclusive examples of available jobs. (*See id.*) Each of these jobs had several hundred thousand jobs available in the national economy. (*Id.*)

Finally, the ALJ determined that Plaintiff's cannabis addiction was material to the disability determination, as he would not be disabled if he stopped cannabis use. (*Id.*) Therefore, the ALJ concluded that Plaintiff would not be disabled if he stopped cannabis use. (AR 30.)

## DISCUSSION

Plaintiff argues that the ALJ committed numerous errors. First, that the ALJ erred by failing to analyze whether Plaintiff could perform unskilled work under SSR 85-15. Second, that the ALJ erred with respect to the materiality of drug use analysis. Third, that the ALJ erred in evaluating the medical opinions. Fourth, that the RFC determination was not based on substantial evidence. Fifth, that the adverse credibility finding was likewise not based on substantial evidence. Finally, Plaintiff insists that the ALJ erred in failing to find that Plaintiff met Listing 12.04. Because the ALJ's weighing of the medical opinion evidence and adverse credibility determination formed the predicate basis for his other findings, the Court's analysis begins there.

## I.      The ALJ's Consideration of Medical Opinion Evidence

### A.      Legal Standard

In the Ninth Circuit, courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as

amended (Apr. 9, 1996)).  A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a nonexamining physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A medical expert's opinion is weighed the same as a nonexamining physician's.  *See* SSR 96-6P, 1996 WL 374180, *2 (1996).  "The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record," and the ALJ "must provide "clear and convincing" reasons for rejecting an uncontradicted opinion of an examining physician.  *Lester*, 81 F.3d at 830-31.

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings."  *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986), *superseded on other grounds by statute*, 42 U.S.C. § 423(d)(5)(A), *as recognized in Bunnell v. Sullivan*, 912 F.2d 1149, 1154 (9th Cir. 1990).  Ultimately, "the ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

"When an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs.  In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."  *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (internal citation omitted).  In weighing medical opinions, the ALJ may consider (1) the examining relationship, (2) the treatment relationship, (3) the supportability, (4) the consistency, (5) the specialization, and (6) other factors brought to the ALJ's attention.  20 C.F.R. § 416.927(c)(5).  In conducting his review, the ALJ "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  *Hill v. Astrue*, 388 F.3d 1144, 1159 (9th Cir. 2012) (internal citations omitted).  "Particularly in a case where the medical opinions of the physicians differ so markedly from the ALJ's[,]" "it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for

disregarding the physicians' findings." *Embrey*, 849 F.2d at 422.

## B.      Analysis

The ALJ gave great weight to the opinions of medical expert Dr. Lace and nonexamining physician Dr. Bradley while only according "little" weight to the opinion of examining physician Dr. Franklin and "less" weight to the opinion of examining physician Dr. Abraham.  (AR 27-28.)

### 1.      *Dr. Franklin*

The ALJ accorded Dr. Franklin's opinion little weight for three reasons: (1) she evaluated Plaintiff only once; (2) she relied in part on Plaintiff's own reporting as to his symptoms; and (3) she did not directly address the effects of cannabis or diagnose cannabis dependence.  (AR 27.)

First, that Dr. Franklin only examined Plaintiff once is not a legitimate reason for rejecting her medical opinion because "[b]y definition an examining opinion is a one-time examination." *See Smith v. Colvin*, No. 14-cv-05082-HSG, 2015 WL 9023486, at *7 (N.D. Cal. Dec. 16, 2015) *see also Raven-Jones v. Berryhill*, No. 3:16-CV-03766-LB, 2017 WL 1477128, at *15 (N.D. Cal. Apr. 25, 2017) (collecting cases re: same).  "Adoption of the ALJ's reasoning would result in the rejection of virtually all examining opinions." *Smith*, 2015 WL 9023486 at *7 (internal citation and quotation marks omitted).  The regulations provide a mechanism for according nonexamining and examining physicians less weight than treating physicians who see claimants multiple times. *See* 20 C.F.R. § 416.927(c).  But all things being equal, examining physicians are still entitled to greater weight than physicians who have *never* examined the claimant.

Second, according little weight based on Dr. Franklin's partial reliance on Plaintiff's self-reports regarding his symptoms is also not a legitimate basis for rejecting her opinion, as this was far from the sole basis for Dr. Franklin's assessment.  Rather, Dr. Franklin also conducted a clinical interview and a series of psychological tests.  (AR 604 (listing eight different assessments performed during the clinical interview).) *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (holding that an opinion could not be rejected when based in part on self-report when the opinion was also based on a clinical interview and a mental status evaluation).  As "[d]iagnoses will always depend in part on the patient's self-report" the test is not whether the physician relied on self-reports but whether her "opinion of disability premised *to a large extent* upon the

16

claimant's own accounts of his symptoms and limitations." *Id.* (emphasis added) (citations omitted). Given the multitude of assessments Dr. Franklin performed here, the fact that she also reviewed Plaintiff's mental health records and conducted a clinical interview, the ALJ erred in rejecting her opinion because she also relied on Plaintiff's self-reporting of symptoms.

However, the ALJ's rejection of Dr. Franklin's opinion because she did not "directly address the effects from the claimant's continued and extensive history of marijuana use and dependence" (AR 27) is a specific and legitimate reason for rejecting her opinion. While Dr. Franklin did note Plaintiff's cannabis use (AR 606-607 (noting that Plaintiff reported he smoked a few times a week) she did not engage in any analysis as to whether that chronic use contributed to his limitations. As the ALJ noted, "[e]ven Dr. Abraham, who diagnosed the claimant with cannabis dependence, similarly suggested consistent with the opinion of Dr. Lace that it can be hypothesized the claimant's depressive symptoms may reflect the dulling effect of marijuana and contribute to a sense of lethargy and fatigue." (AR 27-28.) Assuming that Dr. Franklin implicitly, and without explanation, concluded that Plaintiff's ongoing marijuana use had no effect, the ALJ was entitled to resolve the conflict in the record. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Thus, the ALJ did not err in according examining physician Dr. Franklin little weight.

### 2. *Dr. Abraham*

The ALJ accorded Dr. Abraham's opinion less weight because while Dr. Abraham diagnosed Plaintiff with cannabis dependence, her "functional assessment was at best equivocal." (AR 28.) In other words, while Dr. Abraham speculated that Plaintiff's lethargy, fatigue and depressive symptoms may be caused by marijuana, he did not opine on whether the marijuana use did in fact cause or contribute to his limitations. Similarly, Dr. Abraham did not address Plaintiff's chronic marijuana use on his mental functioning. Dr. Lace, however, did. Further, as the ALJ noted, these findings are consistent with those of the medical expert Dr. Lace. (*Compare* AR 658-59 (Dr. Abraham noting marked impairment in social interactions and ability to attend, sustain effort, comprehend, and remember) *with* AR 663-64 (Dr. Lace noting marked limitations (1) interacting with public, coworkers, and supervisors; and (2) ability to understand, remember, carry out, and make judgments on complex work-related decisions).) The ALJ chose to give more

weight to Dr. Lace than to Dr. Abraham because Dr. Lace, unlike Dr. Abraham, explained whether and how Plaintiff's marijuana use affected those limitations. The ALJ did not err in doing so.

### 3. *Dr. Lace*

The ALJ afforded great weight to the opinion of nonexamining medical expert Dr. Lace. The ALJ cited the following reasons for doing so: (1) he was the only physician to review the entire mental health record; (2) he was the only physician to opine on cannabis's impact on Plaintiff's mental health; and (3) his opinion was consistent with the record. The ALJ's reliance on Dr. Lace's opinion is particularly critical here because the issue of whether Plaintiff would be disabled even without his cannabis use is the dispositive question. Under the DAA analysis the ALJ is required to assess whether Plaintiff is disabled absent drug abuse. If so, then DAA is material, and the Plaintiff is disabled for Social Security purposes. *See Parra*, 481 F.3d at 747

Although the ALJ relied on Dr. Lace's opinion that Plaintiff would not be disabled absent his cannabis use, the ALJ failed to resolve a conflict between Dr. Lace's interrogatory response and his testimony. In his interrogatory response, Dr. Lace hand wrote that there would be "no changes" to his impairment report if Plaintiff abstained from drugs. (AR 664.) During his testimony, Dr. Lace twice affirmed that his interrogatory response correctly stated his "conclusions concerning the medical determinable impairments and limitations." (AR 40, *see also* AR 45 (noting a change to Plaintiff's age, but otherwise affirming his impressions and conclusions).) However, he also testified that in his opinion Plaintiff's depression would improve to the point of non-disability if he were to cease using marijuana. (AR 40-41.)

The Commissioner insists that the interrogatory response was nothing more than a scrivener's error, and even if not, that the ALJ is not required to accord every aspect of a physician's opinion great weight. While this statement is true, the ALJ here failed to even acknowledge the conflict between the testimony and the interrogatory response. *See Hamblin v. Soc. Sec. Admin.*, 123 Fed. Appx. 274, 276 (9th Cir. 2005) (an inconsistency in a physician's report "triggered the ALJ's duty to conduct an appropriate inquiry and develop the record fully and fairly"); *Korenica v. Astrue*, 346 Fed. Appx. 141, 142 (9th Cir. 2009) (holding an ALJ may weigh a physician's inconsistent reports if he or she provides specific and legitimate reasons to

reject an inconsistent portion of the opinion).  The ALJ's failure to investigate or even weigh this inconsistency is especially problematic, where, as here, the opinion in question forms the basis of the ALJ's RFC and finding of non-disability.

The Court cannot assume—as the Commissioner insists—that Dr. Lace's interrogatory response stating that without substance abuse there would be no changes was simply an error. *See Delgado v. Heckler*, 722 F.2d 570, 574 (9th Cir. 1983) (holding that the court cannot rule on assumptions that the Secretary requests the court to accept).  Indeed, that the response was handwritten—Dr. Lace wrote the words "no changes"—is inconsistent with a mere scrivener's error.  And, in any event, the ALJ did not even acknowledge the inconsistency let alone decide that the interrogatory response was an inadvertent mistake.

Further, Dr. Lace's interrogatory response stated that Plaintiff would have marked limitations interacting with the public, supervisors, and coworkers; responding appropriately to usual work situations and changes in routine work setting; and understanding, carrying out, and making judgments on complex work-related decisions.  (AR 663-64.)  In his testimony, when he stated that Plaintiff's depression would improve to the point of non-disability if he were to cease smoking marijuana, the only characteristic that Dr. Lace identified as being linked to marijuana use was "poor attendance, poor compliance . . . the treatment and not showing up for things."  (AR 41.)  Dr. Lace did not testify that ceasing marijuana use would have an effect on the other areas in which he previously identified Plaintiff as markedly limited.  The ALJ nonetheless ignored these other areas of limitation while at the same time stating that he gave great weight to the opinion of Dr. Lace in formulating his RFC.  Given this conflicting and muddy record, the ALJ's conclusions regarding Dr. Lace are not supported by substantial evidence.

*      *      *

Given the unresolved conflict in Dr. Lace's opinion—on whom the ALJ relied in formatting this RFC and in finding Plaintiff not disabled—the ALJ's overall weighing of the medical evidence and RFC finding are not supported by substantial evidence.

## II.    The ALJ's Credibility Determination

### A.  Standard for Assessing Credibility

To "determine whether a claimant's testimony regarding subjective pain or symptoms is credible," an ALJ must use a "two-step analysis." *Garrison*, 759 F.3d at 1014.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citations omitted).  "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citations omitted).  The clear and convincing standard is "the most demanding required in Social Security cases." *Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

### B.  Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the type of alleged symptoms," but he determined that Plaintiff's testimony "concerning the intensity, persistence and limiting effects of these symptoms" was not credible for two reasons: (1) Plaintiff's extensive activities of daily living and (2) Plaintiff's symptoms' partial improvement through medication.  (AR 24, 29.)  Since Plaintiff met the first part of the test, the ALJ could only reject Plaintiff's testimony regarding his symptoms' limiting effects due to evidence of malingering or by offering specific, clear and convincing reasons for doing so.  *See Lingenfelter*, 504 F.3d at 1036.  The ALJ failed to do so.

First, the ALJ determined that Plaintiff's statements were incredible because of his "fairly extensive activities of daily living."  (AR 29.)  Specifically, the ALJ looked at Plaintiff's care for his niece, barbershop work, and residence search.  (*Id.*)  These instances are not clear and convincing reasons to discredit Plaintiff's testimony.  Plaintiff must be "able to spend a *substantial part* of [his] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (emphasis in original) (citations omitted).  Plaintiff cared for his niece occasionally. (AR 652.)  He worked in

his friend's barbershop for a few hours a day, sweeping hair periodically. (AR 685 (". . . I'd just sit there until I see enough hair and then I'll sweep it up and that's all I do for extra change.").) Finally, while Plaintiff did indeed search for a permanent residence there is no evidence in the record regarding what the search involved such that the ALJ could conclude that his search was a transferable job skill. (AR 652 ("I try to find somewhere to stay permanently because I'm homeless.").) None of these activities consume a *substantial part* of Plaintiff's day, and they are therefore inapplicable to discredit Plaintiff's testimony regarding the limiting effects of his symptoms. *See Vertigan*, 260 F.3d at 1049. The ALJ thus erred in using Plaintiff's daily activities to discredit his testimony.

Second, the ALJ discredited Plaintiff's testimony because his medication was "somewhat effective," as evidenced by Plaintiff's own report and the "lack of more aggressive mental treatment." (AR 29.) However, "while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of [his] symptoms." *Id.* While Plaintiff reported "some" improvement with Zoloft at an examination with Dr. Thomas, he was diagnosed in that same visit with Major Depressive Disorder. (AR 640.) Six months later at an examination by Dr. Abraham, Plaintiff was again diagnosed with Depressive Disorder. (AR 655.) This demonstrates the wax and wane of symptoms that the *Garrison* court was concerned with. *See Garrison*, 759 F.3d at 1017. Experiencing "some improvement does not mean that the [Plaintiff's] impairments no longer seriously affect [his] ability to function in a workplace." *See id.* It was an error for the ALJ to rely on the "somewhat effective[ness]" of Plaintiff's medication regimen to discredit his testimony.

The ALJ's adverse credibility finding was thus not based on clear and convincing evidence.

\*    \*    \*

Given the Court's conclusion that the ALJ's evaluation of Dr. Lace's opinion and the adverse credibility finding were in error and both of these formed the basis for the RFC and the

finding of non-disability, the Court declines to consider Plaintiff's additional arguments. The ALJ's errors here were not harmless and thus the ALJ's decision must be reversed. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (an error is harmless if it is "inconsequential to the ultimate nondisability determination").

### III.    Remand

Plaintiff asks the Court to remand for immediate benefits under the credit-as-true rule. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, a court may remand for an immediate award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Each part of this three-part standard must be satisfied for the court to remand for an award of benefits, *id.*, and "[i]t is the 'unusual case' that meets this standard." *Williams v. Colvin*, No. 12–CV6179, 2014 WL 957025, at *14 (N.D. Cal. Mar. 6, 2014) (quoting *Benecke*, 379 F.3d at 595); *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) ("where [...] an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency") (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014)). It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon*, 880 F.3d at 1047.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In particular, the ALJ must further develop the record regarding Plaintiff's disability status without cannabis use. On remand, the ALJ must resolve the conflict between Dr. Lace's interrogatory response and his testimony. The ALJ shall also reassess the medical opinion evidence as a whole, explain the weight afforded to each opinion, and provide legally adequate

22

reasons for any portion of an opinion that the ALJ discounts or rejects, including a legally

sufficient explanation for crediting one doctor's opinion over any of the others.  The ALJ shall

also make a determination regarding the materiality of plaintiff's substance use in accordance with

SSR 13–2p.  *Bustamante*, 262 F.3d at 955; *see* 20 C.F.R. §§ 404.1535, 416.935; SSR 13–2p.  If

necessary, the ALJ shall reassess Plaintiff's RFC and proceed with the remainder of the disability

analysis.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion for summary

judgment, DENIES Defendant's motion, and REMANDS for a new hearing consistent with Order.

This Order disposes of Docket Nos. 19 & 26.

**IT IS SO ORDERED.**

Dated:  May 11, 2018

*Jacqueline Scott Corley*

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California